UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 1:04-CR-70 |
| GARY ROBERGE | ) ) ) | *Judge Edgar* |

**MEMORANDUM AND ORDER**

## I. Introduction

Currently pending before the Court is the motion to suppress evidence filed by defendant Gary Roberge ("Roberge") on June 10. 2004 [Doc. No. 15]. An amendment to defendant Roberge's motion to suppress was filed on September 9, 2004 [Doc. No. 26]. The government filed its response to the motion to suppress, as amended, filed by defendant Roberge [Doc. No. 38].

Consequently, the motion to suppress, as amended, [Doc. Nos. 15, 26] filed by defendant Roberge is now ripe for review. For the reasons set forth in detail, *infra*, the motion to suppress of defendant Roberge, as amended, [Doc. No. 15, 26] will be **DENIED**.

## II. Facts

On Friday afternoon May 20, 2005, this case came before the court for a hearing on defendant's motion to suppress, as amended, [Doc. Nos. 15, 26]. In his motion to suppress, as amended, Roberge seeks suppression of the evidence found at his residence at 138 Quill Drive, Cleveland, Tennessee, on April 13, 2004. This evidence, consisting primarily of methamphetamine laboratory components and firearms was unearthed during a search conducted by Cleveland, Tennessee, police officers pursuant to a state search warrant.

Cleveland police Detective Duff Brumley completed the affidavit for the warrant. A copy of the affidavit is attached to this memorandum and order. The affidavit sought, and the state court granted, not only the right to search defendant's residence, but a waiver of the knock and announce requirement as well. The court has heard the testimony of Detective Brumley and several other witnesses. It is clear that every essential statement made in that affidavit in support of the application for the search warrant is factually accurate.

Briefly summarized, the affidavit states that the initial information about a meth lab being located in defendant's basement, came from defendant's 16 year old daughter, Yodi Roberge, who worked as a babysitter for Chad Warner. Chad Warner worked, at that time, for Terry Wyatt, a reserve Cleveland police officer as well as a local businessman. Detective Brumley interviewed Yodi Roberge who advised that within the last 24 hours she had been in the basement of the Roberge home and had seen various items, which Brumley, based upon his years of experience in law enforcement, knew to be meth lab components. She also said that there was a chemical smell there that burned her nose, and that her father had directed her to obtain matchbooks–which she knew, and which Brumley knew, are used to obtain red phosphorus for the manufacture of methamphetamine. Yodi also said that her father had tendencies toward meanness and violence, used drugs, and had kept an assault rifle in the house. She advised that she and her mother were planning to move out of the home because they feared for their safety. All of this was confirmed by the defendant's wife, whom Brumley saw briefly prior to obtaining the warrant.

Brumley also included in the warrant affidavit additional information about defendant. This included information that defendant had several drug offense arrests; had been the subject of complaints by neighbors that he was shooting firearms at his home; that he had once threatened to

2

kill a bondsmen who had come to pick him up after defendant had absconded on an appearance bond; had been transported on one occasion to Moccasin Bend mental hospital in Chattanooga, Tennessee.

When the search was conducted, the law enforcement officers did indeed find a meth lab in defendant's basement. They also found defendant sleeping in his bedroom next to a loaded semiautomatic rifle. There was a loaded shotgun elsewhere in the house.

## III. Analysis

### A. Probable Cause

Defendant Roberge asserts the warrant permitting the search of his home at 138 Quill Drive, Cleveland, Tennessee, was not based upon probable cause to believe that illegal activity was, or had been, occurring at the residence.

Here, the affidavit for the May 20, 2003, search warrant establishes probable cause. "Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993)(citing *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir.), *cert. denied*, 498 U.S. 837 (1990), quoting *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983)). "A magistrate's probable cause determination should be made in 'realistic and commonsense fashion,' and reviewed in the same manner." *Finch*, 998 F.2d at 352 (quoting *Algie*, 721 F.2d at 1041). In *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983), the "Court adopted a 'totality-of-the circumstances approach' to determine the existence of probable cause, noting that probable cause is a 'practical nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which

reasonable and prudent men, not legal technicians act.'" *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986), *cert. denied*, 479 U.S. 1092 (1987)(quoting *Gates*, 462 U.S. at 230-31, 103 S. Ct. at 2328-29 (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1311 (1949)).

In this instance, it is clear that probable cause existed to support the issuance of the search warrant for Roberge's residence. Detective Brumley first interviewed Chad Warner who told him that Yodi Roberge, a 16 year-old who had worked for Warner as a babysitter, told him (Warner) that her father was making methamphetamine in the basement of their residence. Brumley then interviewed Yodi Roberge, who corroborated Warner's story. In addition to verifying Warner's statement, Yodi Roberge also described some of the items she had seen at her father's alleged methamphetamine lab within the past twenty-four (24) hours, including, but not limited to: glass jars containing various colored liquids, Coleman propane tanks, a Coleman-type camp stove, matchbooks, hydrogen peroxide, glass pipes with bubble heads, various pieces of hoses and tubing, alcohol, and white plastic containers. Based upon his experience as a police officer – Brumley testified at the May 20, 2005 suppression hearing that he had been in more than 200 methamphetamine labs – the items Yodi Roberge stated that she had recently seen the basement of her home did corroborate in Brumley's mind that she had seem a methamphetamine lab. In issuing a warrant, a judicial officer is entitled to rely on an experienced police officer's conclusions based upon the nature of the evidence. *United States v. Stotts*, 176 F.3d 880, 885 (6th Cir. 1999), *cert. denied*, 528 U.S. 1127 (2000).

In his motion to suppress, Roberge claims that the information provided by Detective Brumley was hearsay – that Brumley had no personal knowledge of the information, it had been told to him by Chad Warner – and that the information was stale, because the information had been

provided to Chad Warner by Yodi Roberge "sometime during the past month." [Doc. No. 15, p. 2].

In his affidavit in support of his application for a search warrant, Brumley did discuss the information he learned from Warner. Brumley's affidavit states:

> On April 13, 2004, Cleveland Police Department Reserve Officer Terry Wyatt directed me to one of his employees, Chad Warner, reference the following described situation. Chad Warner, and his wife use sixteen year old Yodi Roberge as their babysitter. Over the last month, the Warner's have had candid conversations with Roberge reference her home life. Roberge said her father, Gary Roberge, "cooks" methamphetamine in the basement of their home. Warner advised she had told him of being forced to help with methamphetamine production . . .

[Government's Exhibit 1, p. 3].

Brumley, however, did not stop there, he spoke with Yodi Roberge who corroborated Warner's statements. His affidavit states:

> . . . Acting on the information from Chad Warner, your affiant made contact with Yodi Roberge at Bradley Central High School in Cleveland, Tennessee. She advised the following. Her father, Gary "cooks" methamphetamine in the basement of their house. In the basement, she *had observed within the last 24 hours*, glass jars with various colored liquids, [C]oleman propane tanks, a [C]oleman type camp stove, matchbooks, hydrogen peroxide, glass pipes with bubble heads, numerous pieces of hoses and tubing, alcohol and white plastic containers. She further advised that on at least one occasion, he had made her purchase large amounts of matches for him. . . . She said he possesses firearms, an AK47 assault rifle in his bedroom and an automatic handgun in the basement with the methamphetamine laboratory. Yodi said she had observed her father smoking methamphetamine in the basement without his knowledge. She said the basement omits a strong odor that sometimes burns her throat. She said her father burns trash from the clandestine laboratory in a pit close to the house . . . Yodi Roberge gave me detailed driving directions to the premises to be searched and they were almost identical to that of Chad Warner's . . . .

*Id.*, pp. 4-5 (emphasis added).

Thus, Detective Brumley did not simply rely on Chad Warner's statements as the basis for his affidavit in support of his application for a search warrant, he interviewed Yodi Roberge, who corroborated Warner's statements. More specifically, Yodi Roberge's description of the equipment in her father's alleged methamphetamine laboratory was not based upon information which was a month old, it was based upon Yodi Roberge's personal observations within the immediate preceding 24 hours. A staleness determination is not based upon a specific time frame, but should be based upon numerous factors such as the nature of the crime, whether the criminal has a stable locale, whether the thing to be seized is perishable or of enduring value, and whether the place to be searched is a chance location or a secure base for the suspect. *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001).

Moreover, where alleged criminal activity takes place in a "secure operational base," the passage of time takes on less significance in a staleness inquiry. *Id.* at 481. Where the place to be searched is the defendant's home, or in this case, primarily the basement of the defendant's home, there is a suggestion of a degree of permanence to the defendant's base of operation. *Id.* (citing *United States v. Yates*, 132 F. Supp. 2d 559, 565 (E.D. Mich. 2001)). Therefore, where as here, Yodi Roberge described ongoing criminal activity – she described the component parts of a methamphetamine laboratory – which she had observed in the basement of the defendant's, and her own home within the previous twenty four (24) hours, the information was not stale.

"[T]he traditional standard for review of an issuing [judge]'s probable-cause determination has been than so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Pelham*, 801 F.2d at 877-78 (quoting *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting *Jones v. United States*,

6

362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960)). In this action, the Court finds that there was more than sufficient evidence set forth in Detective Brumley's affidavit in support of his application for a search warrant to allow the Bradley County (Tennessee) Criminal Court Judge to draw a reasonable inference that evidence of criminal activity – a methamphetamine laboratory – would be found at defendant Roberge's residence.

### B. Leon Good Faith Exception

In its response to defendant's motion to suppress, the government argues that even if this Court should find that the affidavit was deficient under the Fourth Amendment, and subsequently that there was no probable cause for the search, the search would still be valid under the good-faith exception found in *United States v. Leon*, 468 U.S. 897 (1984). [Doc. No. 38, pp. 14-15]. Further, the government also notes that the defendant has not addressed the *Leon* good-faith exception in his motion to suppress, as amended, and that he has made no allegation of police misconduct. *Id.* at p. 15.

As set forth in detail above, the Court has concluded that Detective Brumley's affidavit was not deficient and that there was more than ample probable cause for the search of defendant Roberge's residence on April 13, 2004. However, assuming *arguendo* that the Court had found that the affidavit was lacking probable cause, it clearly is not "so lacking" in probable cause as to render a good-faith reliance on the search warrant issued pursuant to the affidavit unreasonable. *United States v. Van Shutters*, 163 F.3d 331, 337-38 (6th Cir. 1998).

### C. Knock-and-Announce waiver

In this instance, the search of Roberge's residence at 138 Quill Drive, Cleveland, Tennessee, on April 13, 2004, was performed pursuant to a no-knock warrant – a warrant which permitted the

7

officers to execute the search without first complying with the knock-and-announce requirement. The Supreme Court has recognized that "the Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." *Richards v. Wisconsin*, 520 U.S. 385, 387, 117 S. Ct. 1416, 1418, 137 L.Ed.2d 615 (1997)(citing *Wilson v. Arkansas*, 514 U.S. 927, 115 S. Ct. 1914, 131 L.Ed.2d 976 (1995)).[1] Thus, although the search or seizure of a dwelling might be constitutionally defective if the police enter without prior announcement, law enforcement interests – *i.e.*, exigent circumstances – can establish the reasonableness of an unannounced entry under the Fourth Amendment. *United States v. Johnson*, 267 F.3d 498, 500 (6th Cir. 2001)(citing *Wilson*, 520 U.S. at 936, 115 S. Ct. 1914). Where, as here, law enforcement officers enter a dwelling on the authority of a no-knock warrant, the Court "must determine whether the allegations contained in the warrant application were sufficient to support a conclusion that exigent circumstances justified the issuance of no-knock authority. *Id.*

The portion of the affidavit relevant to the knock-and-announce requirement states:

> Your affiant . . . asks the [state criminal court judge] to waive the "knock and announces [sic] requirement" during the execution of this warrant. The basis for this request are contained in the following events described to your affiant. Agent Craig Frost has given your affiant information indicating Gary Roberge has, at a minimum, in the past, at times, been mentally unstable and has been taken to

---

[1] Although 18 U.S.C. § 3109, the federal no-knock statute codifies the common law knock-and-announce rule, § 3109 does not apply in this instance because "section 3109 does not apply to searches conducted entirely by state officers pursuant to a state warrant." *United States v. Scroggins*, 361 F.3d 1075, 1079-80 (8th Cir. 2004). Section 3109 does apply to the execution of state warrant when "federal officers area significant part of a search." *Id.* Based upon the testimony elicited during the May 20, 2005 suppression hearing, the instance search was performed pursuant to a state warrant and there was no indication that federal officers were a significant part of the search.

8

> Moccasin Bend Mental Institution in Chattanooga, Tennessee, been involved in confrontations with neighbors at the premises to be searched and originated complaints of firearms being discharged, disturbing the peace in the area of the premises to be searched. Yodi Roberge has provided information that Roberge possesses an AK-47 assault rifle (bedroom of residence, upstairs) and an automatic handgun (basement with clandestine laboratory) and has threatened violence against her on several occasions. Further, she has expressed a situation in which he exhibits control over her mother, Christel, and herself, by bestowing fear. A check of the computer automated dispatch system showed Roberge at a minimum threatened violence and bodily harm to a bondsman on July 30, 2002, after absconding on his bond. Taking into account the paranoia the use of methamphetamine produces and Roberge's history for confrontation and threats of violence, accompanied with the issue of Roberge possessing at least tow [sic] firearms, and having access to those firearms in both living areas of the premises to be searched, your affiant request the "knock and announce" requirement be waived during execution of the search warrant for the premises of 138 Quill Drive, Cleveland, Tennessee.

[Government's Exhibit 1, Application for Search Warrant, p. 5].

In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances would be dangerous or futile or that it would inhibit the effective investigation of the crime. *Richards*, 520 U.S. at 394, 117 S. Ct. at 1421. The reasonable suspicion standard – which is lower than the probable cause standard – "requires a court to evaluate the totality of the circumstances to determine whether the police officers had a particularized and objective basis for their conclusion." *United States v. Scroggins*, 361 F.3d 1075, 1081 (8th Cir. 2002)(citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L.Ed.2d 740 (2002). Further, the reasonable suspicion standard permits "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Id.* Lastly, the reasonable suspicion "standard – as opposed to a probable-cause requirement – strikes the appropriate balance

9

between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries." *Richards*, 520 U.S. at 394, 117 S. Ct. at 1421-22.

In this case, the Court finds that under the totality of the circumstances Detective Duff Brumley – the affiant – had a reasonable suspicion based upon the particularized and objective facts known to him as well as the reasonable inferences he could make from his own experience and training as a police officer that a no-knock warrant was necessary to protect the safety of the officers executing the warrant at Roberge's residence. This is based upon the facts known to Brumley at the time he applied for the warrant that: (1) Agent Craig Frost had provided information that on one occasion Roberge had been transported to the Moccasin Bend mental hospital; (2) that defendant had been involved with confrontations with neighbors, particularly, that there had been complaints by the neighbors about firearms being discharged in the vicinity of Roberge's residence; (3) defendant's daughter stated that she feared for her safety because her father had a tendency towards violence and meanness; (4) defendant's daughter advised that he was armed with an AK47 assault rifle and an automatic handgun; (5) a computer check showed that defendant had, at the very least, threatened a bondsman after absconding from bond; (6) Detective Brumley's knowledge – based upon his training and experience as a police officer – that methamphetamine adds to the paranoia of its users; and (7) defendant's daughter told Detective Brumley that his methamphetamine lab was located the vicinity of where he kept one of his guns.[2]

---

[2] The evidence at the May 20, 2005 suppression hearing, showed that defendant's assault rifle was not an AK47. However, the testimony was that when the police executed the search warrant they found defendant asleep in the upstairs bedroom and that next to him on the bed was an assault rifle with two magazines. The magazines had been taped together in such a manner that when the first magazine was emptied, the other magazine could simply be rotated

10

Thus, the Court finds that based upon the totality of the circumstances, the police, particularly Detective Brumley, did have a reasonable suspicion based upon objective facts and circumstances known to him and interpreted based upon his training and experience that a no-knock warrant was necessary to protect the safety of the officers executing the warrant. See *United States v. Mattison*, 153 F.3d 406, 410 (7th Cir. 1998)("failure to knock and announce the execution of a search warrant is excused if exigent circumstances exist, such as . . . when drugs or firearms are regularly observed inside a defendant's residence . . ."). Here, based upon the fact that defendant's daughter told Detective Brumley that she regularly observed firearms in the Roberge residence, at least one of which was kept in the vicinity of the alleged methamphetamine lab, combined with knowledge that Roberge had a tendency towards violence/meanness and had been transported to a mental hospital on one occasion, the Court finds that exigent circumstances did exist to excuse the knock-and-announce rule in order to protect the safety of the officers executing the warrant.

Further, at least one court has held that because the showing that the police must make in order to obtain a no-knock warrant is the same showing they would have to make to justify their own decision to dispense with the knock-and-announce rule when executing a warrant, assuming that the judge was wrong in authorizing a no-knock entry, the police can rely on the *Leon* good-faith

---

into place – allowing for quicker reloading of the assault rifle.

At the suppression hearing, defendant's counsel argued that the totality of the circumstances did not warrant a reasonable suspicion that executing the search warrant would pose a danger to the officers because many people legally keep firearms in their home. While this is certainly true, the Court notes that it doubts that many of the individuals who legally keep firearms in their home actually go to sleep next to a loaded assault rifle while at the same time having a methamphetamine lab in the basement of their residence.

11

exception to prevent suppression of the evidence. *Scroggins*, 361 F.3d at 1082.[3]  In this instance, the police relied on a no-knock warrant issued by a judge of the Criminal Court of Bradley County Tennessee.  Further, that portion of Detective Brumley's affidavit which sought a "no-knock" warrant set forth numerous grounds justifying the reasonably suspicion that an exigency existed to excuse the knock-and-announce rule in order to protect the safety of the law enforcement officers executing the warrant at defendant Roberge's residence.  Accordingly, assuming arguendo that the state court judge erred in issuing a no-knock warrant the officers executed the search warrant in good faith believing it validly waived the knock-and-announce requirement.  Thus, the Court also concludes that the *Leon* good-faith exception would prevent suppression of any evidence obtained assuming *arguendo* that the "no-knock" portion of the warrant at issue here had been improvidently granted by the state judge.

**IV.     Conclusion**

For the reasons stated above the defendant's motion to suppress, as amended [Doc. Nos. 15, 26], is **DENIED**.

SO ORDERED.

ENTER this *27th day of May, 2005*.

                                                      */s/ R. Allan Edgar*
                                                    R. ALLAN EDGAR
                                  CHIEF UNITED STATES DISTRICT JUDGE

---

[3]     Further, in *United States v. Mattison*, 153 F.3d 406, 411 n.4 (7th Cir. 1998), the Seventh Circuit stated, albeit in *dicta*, that where police officers act in good faith in executing what they believe to be a valid "no-knock" warrant, a finding of good faith pursuant to *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984), would prevent suppression of any evidence obtained in such a search.

12