UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

GARY ROBERGE,                          )
                                       )
        Petitioner,                    )
                                       )
v.                                     )        Case Nos. 1:04-cr-70 / 1:10-cv-273
                                       )        Judge Edgar
UNITED STATES OF AMERICA,              )
                                       )
        Respondent.                    )

## MEMORANDUM AND ORDER

Federal prisoner Gary Roberge ("Roberge") moves for post-conviction relief under 28 U.S.C.

§ 2255. After reviewing the record, the Court concludes that the *pro se* motion will be denied and

dismissed with prejudice. The record conclusively shows that the motion is without merit and

Roberge is not entitled to any relief under § 2255. There is no need for an evidentiary hearing.

## I.    Standard of Review Under 28 U.S.C. § 2255

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside,

or correct a judgment of conviction or sentence on the ground that the sentence was imposed in

violation of the Constitution or laws of the United States, or that the federal district court lacked

jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by

federal law, or is otherwise subject to collateral attack.

As a threshold standard to relief a § 2255 motion must allege: (1) an error of constitutional

magnitude; (2) a sentence was imposed outside the federal statutory limits; or (3) an error of fact or

law that was so fundamental as to render the entire criminal proceeding invalid. *Short v. United

States*, 471 F.3d 686, 691 (6th Cir. 2006); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006);

*Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445,

454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

Roberge bears the burden of establishing an error of federal constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

A § 2255 motion is not a substitute for a direct appeal. Where nonconstitutional issues are at stake, there is no basis for allowing a collateral attack under 28 U.S.C. § 2255 to do service for a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To obtain relief under 28 U.S.C. § 2255 for a nonconstitutional error, Roberge must establish either: (1) a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice; or (2) an error so egregious that it amounts to a violation of due process. *Reed*, 512 U.S. at 353-54; *Hill v. United States*, 368 U.S. 424, 428 (1962); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Grant,* 72 F.3d at 505-06.

An evidentiary hearing is unnecessary if there are no genuine issues of material fact in dispute and the record conclusively shows that Roberge is not entitled to relief under § 2255. An evidentiary hearing is not required where the allegations and claims cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485 (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th

Cir. 1999); *Brain v. United States*, 2011 WL 1343344, * 2 (E.D. Tenn. April 8, 2011); *Jones v. United States*, 2010 WL 1882122, * 1 (E.D. Tenn. May 11, 2010).

The burden is on Roberge to articulate sufficient facts to state a viable claim for relief. Vague, conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Brain*, 2011 WL 1343344, at * 2; *Jones*, 2010 WL 1882122, at * 2.

## II.    Facts and Procedural History

The underlying facts are summarized in *United States v. Roberge*, 565 F.3d 1005 (6th Cir. 2009). Roberge resided in a house in Cleveland, Tennessee with his wife, Christel, and their teenage daughter, Yodi. Detective Brumley received reliable information that Yodi Roberge, who was then 16 years of age, had told another person that her father was "cooking" (manufacturing) methamphetamine in the basement of their home. Detective Brumley went to the high school where Yodi was a student and interviewed her. Yodi told Detective Brumley that Roberge was cooking methamphetamine in the basement of their home and the fumes burned or irritated her throat.

Detective Brumley obtained a search warrant. When police officers executed the search warrant at Roberge's house, they found him asleep in bed with a loaded assault rifle. In the basement, officers seized various items associated with the manufacture of methamphetamine including glass jars containing bi-layered liquids, iodine tincture, Coleman fuel cans, muriatic acid, and plastic tubing. The police found a functional methamphetamine laboratory in the basement, the same place where Yodi had observed Roberge using methamphetamine. The police also found a

3

loaded shotgun and another rifle. The police seized a total of three firearms plus ammunition.

The Tennessee Bureau of Investigation (TBI) tested two samples of the bi-layered liquids and found methamphetamine in the top layer of each sample. Roberge's expert witness, a scientist at a forensics toxicology laboratory, evaluated the same samples. He found no methamphetamine in the first sample and trace amounts of methamphetamine in the second sample. Roberge's expert witness conceded it was possible that the TBI's testing may have consumed the layer containing methamphetamine in the first sample.

A federal grand jury returned a four-count indictment against Roberge. Count One charged that he possessed firearms and ammunition as an unlawful user of a controlled substance, methamphetamine, in violation of 18 U.S.C. § 922(g)(3). Count Two One charged Roberge with attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count Three charged him with possessing equipment, chemicals, products, and materials which may be used to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6). In Count Four, Roberge was charged with possessing a firearm in furtherance of drug-trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Roberge pleaded not guilty and the case went to trial. In her trial testimony, Yodi described her father's use of methamphetamine in the basement. Yodi testified that one or two months before the police executed the search warrant, Roberge asked Yodi to buy and provide him with seven bottles of rubbing alcohol and six or seven boxes of matchbooks. Yodi saw Roberge remove the striker strips from the matchbooks. Detective Brumley testified that soaking the match strips in alcohol would produce red phosphorous, a key component used to manufacture methamphetamine.

Yodi also testified that she saw Roberge washing glass jars and taking them into the basement, after which she noticed a "real funny smell" and her skin broke out. Todd Russell, a

4

convicted cocaine dealer who shared a jail cell with Roberge, testified that Roberge admitted to manufacturing and selling methamphetamine. The jury returned a verdict finding Roberge guilty on all four counts.

The probation office prepared a presentence report (PSR) and calculated the applicable advisory federal sentencing guidelines. Pursuant to U.S.S.G. § 2K2.1(a)(6)(1) the base offense level for Count One was 14. Two levels were added because the conviction under Count One involved three firearms. There was an adjusted offense level of 16 on Count One.

With regard to Count Two, Roberge possessed four 16-ounce bottles plus a one liter bottle of tincture of iodine for a combined total of 94 ounces of iodine. The PSR extrapolated 99.64 grams of methamphetamine from this quantity of iodine. Applying the standard DEA conversion formula, one ounce of tincture of iodine yields 1.06 grams of methamphetamine. Roberge could have used the 94 ounces of iodine to manufacture 99.64 grams of methamphetamine. The estimated 99.64 grams of methamphetamine resulted in a base offense level of 26 under U.S.S.G. § 2D1.1(c).

A six-level increase was added to the offense level because Roberge created a substantial risk of harm to the life of a child, namely his minor daughter. U.S.S.G. § 2D1.1(b)(10)(D). Yodi lived in the house where Roberge had his methamphetamine lab. Yodi reported that the fumes burned her throat and caused her skin to break out. Because Roberge used his daughter, who was less than 18 years of age, to procure precursor chemicals and thereby assist Roberge in his efforts to manufacture methamphetamine, two more levels were added pursuant to U.S.S.G. § 3B1.4. After applying these enhancements, there was an adjusted offense level of 34 on Count Two.

On Count Three, Roberge started out with a base offense level of 12 under U.S.S.G. § 2D1.12(a)(1). This was increased by two levels pursuant to U.S.S.G. § 2D1.12(b)(1) because he intended to manufacture methamphetamine. The cross-reference in U.S.S.G. § 2D1.12(c) increased

the offense level to 32, based on his conviction on Count Two. There was also an additional two-level increase under U.S.S.G. § 3B1.4 because Roberge used his minor daughter to commit the crime. This yielded an adjusted offense level of 34 on Count Three.

Counts One, Two, and Three were grouped together pursuant to U.S.S.G. § 3D1.2(b) because the offense conduct involved the same victim, acts, common scheme, and plan. In sum, Roberge's total adjusted offense level was 34 and he had six criminal history points for a criminal history category III. The advisory guideline range was 188 to 235 months imprisonment.

The conviction on Court Four for violating of 18 U.S.C. § 924(c)(1)(A)(i) required the Court to impose a mandatory consecutive sentence of an additional 60 months imprisonment. This resulted in a final effective advisory guideline range of 248 - 295 months imprisonment.

Counsel for Roberge raised nine objections to the PSR, several of which are relevant to the instant 28 U.S.C. § 2255 motion. Defense counsel objected to the quantity of methamphetamine for which Roberge was deemed responsible that was calculated based on the quantity of iodine. Counsel argued that if Roberge was attempting to manufacture methamphetamine, he had "done an extremely poor job." The probation officer responded that conversion of the 94 ounces of iodine into 99.64 grams of methamphetamine was correctly calculated using an established DEA formula and Roberge's level of skill, or lack of skill, in manufacturing methamphetamine did not reduce his culpability for the 99.64 grams of methamphetamine.

Defense counsel objected to the PSR regarding victim impact. Counsel argued that Roberge was only convicted of attempting to manufacture methamphetamine, and there was no evidence that the manufacture of methamphetamine had occurred and created any risk of harm to other persons. The probation officer responded that the evidence at trial established Roberge had been in the process of manufacturing of methamphetamine.

6

Defense counsel also objected to the six-level enhancement on Count Two pursuant to U.S.S.G. § 2D1.1(b)(10)(D) for creating a substantial risk of harm to the life of a child, Yodi. Counsel argued that because Roberge was convicted of attempting to manufacture methamphetamine, there was no evidence of risk of actual harm to Yodi. The probation officer correctly responded by pointing out the significant health hazards and dangers associated with the manufacture of methamphetamine.

Defense counsel objected to the two-level enhancement pursuant to U.S.S.G. § 3B1.4 based on Roberge using his daughter, who was less than 18 years of age, to procure the supply of matches. It was argued that the daughter's purchase of the matches was legal and should not be counted. In response, the probation officer stated that the two-level enhancement under U.S.S.G. § 3B1.4 was warranted. Although purchasing matches containing red phosphorous is not *per se* illegal, red phosphorous is a precursor chemical for the manufacture of methamphetamine and Roberge had been found guilty of attempting to manufacture methamphetamine.

During the sentencing hearing on May 4, 2006, this Court denied Roberge's objections to the PSR. The Court heard testimony from DEA agent David Shelton regarding the conversion of the 94 ounces of iodine tincture into 99.64 grams of methamphetamine. This Court found that the amount of 99.64 grams of methamphetamine was correctly calculated in the PSR. The Court heard testimony from Shelton concerning the serious risk of harm presented by the methamphetamine lab inside Roberge's home. After considering the four factors in U.S.S.G. § 2D1.1, Application Note 20(A), this Court correctly found by a preponderance of the evidence that Roberge's methamphetamine lab posed a substantial risk of harm to the life of his minor daughter, Yodi. *See United States v. Layne*, 324 F.3d 464, 469-71 (6th Cir. 2003).

This Court sentenced Roberge to a total term of 295 months imprisonment at the top of the

advisory guideline range. The sentence consisted of concurrent terms of 120 months imprisonment on each of Counts One and Three, and 235 months imprisonment on Count Two. On Count Four, the Court imposed a consecutive term of 60 months imprisonment which is the mandatory minimum sentence under 18 U.S.C. § 924(c)(1)(A)(i). He was further sentenced to five years of supervised release. The judgment of conviction was entered on May 22, 2006.

Roberge took a direct appeal from his judgment of conviction and sentence. On May 20, 2009, the Sixth Circuit Court of Appeals affirmed the judgment and dismissed the direct appeal. *Roberge*, 565 F.3d 1005. Roberge filed a petition for writ of certiorari in the United States Supreme Court which was denied on October 5, 2009. *Roberge v. United States,* 558 U.S. 924 (2009).

## III.    Analysis

Roberge pleads three claims or grounds for relief in his 28 U.S.C. § 2255 motion. The first and second claims allege that Roberge was deprived of his right to the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. In his third claim, Roberge contends that 18 U.S.C. § 922(g)(3) is unconstitutional both on its face and as applied to his case.

### A.    *Strickland* Test

The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the to right to assistance of counsel for his defense. Ineffective counsel that violates the Sixth Amendment occurs when an attorney's deficient performance causes actual prejudice to the defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004).

*Strickland* establishes a two-part test for deciding claims of ineffective counsel. First, Roberge must show that his attorney's performance was deficient. Second, Roberge is required to demonstrate that the attorney's deficient performance caused him to suffer actual prejudice.

8

*Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836-37; *Griffin*, 330 F.3d at 736; *Smith v. Mitchell,* 348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell,* 320 F.3d 604, 616 (6th Cir. 2003).

The first prong of the *Strickland* test requires Roberge to show that his attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Sowell*, 372 F.3d at 836; *Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2003); *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995). The Court's scrutiny of the reasonableness of counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90 (strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance); *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason,* 320 F.3d at 616-17; *Wickline,* 319 F.3d at 819; *Skaggs v. Parker*, 235 F.3d 261, 268 (6th Cir. 2000); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996); *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994).

Strategic choices made by an attorney after thorough investigation of the relevant facts and law are virtually unchallengeable. Strategic choices made by counsel after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation or restriction placed on the investigation. Defense counsel has a duty to make a reasonable investigation under the circumstances or make a reasonable decision that a particular investigation is unnecessary. *Strickland*, 466 U.S. at 690-91; *Skaggs*, 235 F.3d at 268.

The second prong of the *Strickland* test requires Roberge to show that the attorney's deficient performance caused actual prejudice to his case. *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11

9

F.3d 1349, 1352 (6th Cir. 1993). The prejudice component focuses on the question whether counsel's deficient performance renders the result of the criminal proceeding unreliable or fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of counsel was so manifestly deficient that defeat was snatched from the hands of probable victory. *Thelen v. United States,* 131 Fed. Appx. 61, 63 (6th Cir. 2005); *West*, 73 F.3d at 84; *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

To satisfy the prejudice element, Roberge must show there is a reasonable probability that, but for the errors and deficient performance of counsel, the result would have been different and more favorable to him. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the criminal proceeding. *Strickland*, 466 U.S. at 693-94; *Humphress*, 398 F.3d at 859; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason*, 320 F.3d at 617; *Wickline,* 319 F.3d at 819. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Roberge contends that his advisory sentencing guideline ranges were incorrectly calculated and this forms the basis for his ineffective counsel claims. It is argued that errors in calculating the guideline ranges were primarily caused by his counsel's deficient performance and failure to: (1) bring particular points of law to this Court's attention; (2) inform this Court about how the facts and law should apply to properly calculate the guideline ranges; and (3) present and preserve alleged errors for review on direct appeal by the Sixth Circuit Court of Appeals. Roberge claims that counsel's deficient performance caused him to receive a greater or longer sentence of imprisonment than would have been imposed if his guideline ranges been correctly calculated.

The Court concludes that these claims of ineffective counsel are without merit. The Court completely rejects Roberge's arguments that his sentencing guideline ranges were incorrectly calculated. The record conclusively shows that the guideline ranges were correctly calculated in Roberge's case and this Court did not make any errors during sentencing.

Roberge does not have a viable Sixth Amendment claim of ineffective counsel because he cannot meet his burden of establishing either prong of the *Strickland* test. Roberge cannot show that his attorney's performance was deficient and fell below an objective standard of reasonableness. He also cannot show that the attorney's performance caused him to suffer any actual prejudice. There is no reasonable probability that the outcome of the criminal case would have been different and more favorable to Roberge if his counsel had raised the specific arguments and objections now advocated by Roberge in his § 2255 motion. Any such arguments and objections by Roberge's counsel challenging the calculation of the sentencing guideline ranges would have been futile and summarily denied as frivolous. Defense counsel cannot be faulted for failing to make frivolous arguments and objections which had no viable chance of success.

**B.** **First Claim**

Roberge claims his counsel was ineffective by not objecting to the method used to calculate the guideline ranges on Counts Two and Three based on the Double Jeopardy Clause in the Fifth Amendment to the United States Constitution. He focuses on the fact that the iodine was used to calculate his guideline ranges on both Counts Two and Three. Roberge refers to this as "double counting" the iodine and complains that he has been punished twice for possessing the iodine.

The double jeopardy argument is predicated on the following theory. Roberge was convicted under Count Two for attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). He was convicted under Count Three for possessing equipment, chemicals, products,

and materials (including the iodine) which may be used to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6). The base offense level for Count Two was determined by finding that Roberge could have used the 94 ounces of iodine to manufacture 99.64 grams of methamphetamine. With regard to Count Two, the 94 ounces of iodine was used or treated in its converted form, i.e. 99.64 grams of methamphetamine. The iodine was also used to determine the base offense level on Count Three pursuant to U.S.S.G. § 2D1.12(a)(1). With regard to Count Three, the iodine was considered in its actual form and was not converted into methamphetamine. Roberge contends that the iodine cannot simultaneously exist as both iodine and methamphetamine. He argues that "double counting" the iodine in this manner when calculating his guideline ranges on Counts Two and Three is prohibited by the Double Jeopardy Clause in the Fifth Amendment.

In his reply brief, Roberge says that he does not dispute the validity of his sentence of 120 months imprisonment on Count Three. Roberge only challenges the validity of his sentence of 235 months imprisonment on Count Two. Roberge argues that his counsel was ineffective for not raising a double jeopardy objection to the iodine being used to also calculate his sentencing guideline range on Count Two. [Court Doc. No. 131, Petitioner's Reply p. 4].

This argument fails. There is no double jeopardy violation because Roberge was not subjected to multiple punishments for the same criminal offense. There is no double jeopardy when the iodine is used to calculate the sentencing guideline ranges on both Counts Two and Three. Roberge cannot show that his counsel was ineffective for not presenting this frivolous double jeopardy argument or objection during sentencing and on direct appeal.

The Double Jeopardy Clause in the Fifth Amendment embodies three types of protection for criminal defendants. It protects against: (1) a second prosecution for the same criminal offense after acquittal; (2) a second prosecution for the same criminal offense after conviction; and (3) multiple

12

punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977); *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013). In Roberge's case, we are only concerned with the question of multiple punishments in a single criminal proceeding.

A single act or transaction can give rise to distinct criminal offenses under separate statutes without constituting double jeopardy. *United States v. Theunick*, 651 F.3d 578, 587 (6th Cir. 2011); *United States v. DeCarlo*, 434 F.3d 447, 454 (6th Cir. 2006). The Double Jeopardy Clause protects Roberge from being punished more than once for a single act when Congress does not intend for there to be multiple punishments. It is essentially a matter of determining the legislative intent of Congress in enacting the federal criminal statutes. With respect to multiple punishments or cumulative sentences in a single criminal proceeding, the Double Jeopardy Clause does no more than prevent the sentencing court from imposing greater punishment than the legislature intended. *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Volpe*, 708 F.3d at 696.

In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court developed the "same elements" test to determine whether Congress has authorized multiple punishments. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304. It is well settled that a defendant may be convicted of multiple crimes arising from the same act or course of conduct so long as each criminal charge requires proof of a fact which the other does not. *United States v. Kurlemann*, 708 F.3d 722, 734 (6th Cir. 2013); *Theunick*, 651 F.3d at 587; *United States v. Hart*, 635 F.3d 850, 858 (6th Cir. 2011). The *Blockburger* test is a rule of statutory construction that is utilized to determine legislative intent. *Albernaz*, 450 U.S. at 340. It is not a constitutional test in and of itself. *Volpe*,

708 F.3d at 696.

When the *Blockburger* test is applied in Roberge's case, there is no double jeopardy violation. This Court did not impose multiple punishments against him for the exact same offense. Roberge was convicted under Count Two for attempting to manufacture methamphetamine. He was convicted under Count Three for possessing equipment, chemicals, products, and materials which may be used to manufacture methamphetamine. These are separate, distinct criminal offenses involving different facts and elements. When the elements of each offense are compared, it is clear Congress intends that multiple punishments may be imposed on Roberge for committing these two separate offenses. Counts Two and Three each require proof of a fact or element which the other does not.

To convict Roberge under Count Two for attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), the government was required to prove that: (1) he intended to commit the crime of manufacturing methamphetamine; and (2) he did some overt act that was a substantial step towards committing crime of manufacturing methamphetamine. *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989); Sixth Circuit Pattern Criminal Jury Instructions § 5.01 Attempt - Basic Elements.

To convict Roberge under Count Three for violating 21 U.S.C. § 843(a)(6), the government was required to prove that: (1) he knowingly or intentionally possessed any equipment, chemicals, products, or materials which could have been used to manufacture methamphetamine; and (2) at the time of such possession, he knew, intended, or had reasonable cause to believe that the items would be used to manufacture methamphetamine. *United States v. Yates*, 86 Fed. Appx. 157, 159 (6th Cir. 2004); *United States v. Argo*, 23 Fed. Appx. 302, 306 (6th Cir. 2001).

Under the *Blockburger* test, these are separate and distinct criminal offenses. There is no

double jeopardy when Roberge is convicted and sentenced on Counts Two and Three. *United States v. Beltz*, 385 F.3d 1158, 1161-62 (8th Cir. 2001) (no double jeopardy bar to prosecution for crime of possessing pseudophedrine with reasonable cause to believe chemical would be used to manufacture methamphetamine and separate crime of attempting to manufacture methamphetamine because these charges each require proof of different elements). For purposes of double jeopardy analysis, it is immaterial that the iodine seized from Roberge was used to calculate his sentencing guideline ranges on both Counts Two and Three.

Roberge mistakenly cites *United States v. Kingston*, 922 F.2d 1234 (6th Cir. 1990). His reliance on *Kingston* is misplaced. *Kingston* is inapposite and does not support his double jeopardy argument. Roberge's case is readily distinguishable from *Kingston* on the facts and the law. In *Kingston*, the Sixth Circuit did not address the issue of double jeopardy. *Kingston* is not a double jeopardy case.

In *Kingston*, the defendant pled guilty to violating 21 U.S.C. § 841(d), possession of a "listed chemical" (phenylacetic acid) with the intent to manufacture and distribute methamphetamine.[1] The district court correctly sentenced defendant Kingston based on the amount of methamphetamine that could have been produced had his criminal plan or scheme come to fruition, rather than the actual amount of the listed chemical that he possessed.

Defendant Kingston took a direct appeal to the Sixth Circuit. On appeal, he argued that the district court erred by examining and using the Drug Equivalency Tables in U.S.S.G. § 2D1.1 to determine his guideline base offense level on the 21 U.S.C. § 841(d) conviction. The Sixth Circuit was confronted with the question whether U.S.S.G. § 2D1.1 could be used to calculate the

---

[1]  21 U.S.C. § 841(d) was redesignated and recodified as 21 U.S.C. § 841(c) in 2000. Pub.L. 106-172, § 9.

sentencing guideline range for violations of former 21 U.S.C. § 841(d). This specific question does not exist in Roberge's case. The defendant/appellant in *Kingston* argued that his guideline range should have been calculated based solely on the quantity of the listed chemical he possessed, not the estimated amount of the methamphetamine that could have been produced using that listed chemical. The Sixth Circuit rejected this argument. The Sixth Circuit affirmed the district court's judgment on this particular sentencing question.

In *Kingston*, 922 F.2d at 1237-38, the Sixth Circuit sets forth its analysis of the proper method for applying U.S.S.G. § 2D1.1 to calculate sentencing guideline ranges for violations of 21 U.S.C. § 841(d). It established a method whereby violations of 21 U.S.C. § 841(d) could be sanctioned under U.S.S.G. § 2D1.1. The Sixth Circuit stated in part:

> Violations of [21 U.S.C.] § 846 are punished with reference to the amount of the controlled substance that would have been involved had the attempt been successful. U.S.S.G. § 2D1.4. In fact, the same Drug Quantity and Equivalency Tables used in U.S.S.G. § 2D1.1 are also used in U.S.S.G. § 2D1.4. As both [21 U.S.C.] § 841(d) and § 846 have the same object, limiting access to controlled substances by criminalizing attempts to create them, it is sensible that they both be punished according to the same principles.

*Kingston*, 922 F.2d at 1238.

In support of his double jeopardy argument, Roberge improperly takes this paragraph from *Kingston* out of context and misapplies it to his case. Roberge contends that former 21 U.S.C. § 841(d) is similar to 21 U.S.C. § 843(a)(6), the offense he was convicted on under Count Three. Roberge argues that *Kingston* can or should be applied to his case in the following way:

> [S]etting Roberge's sentence for possessing chemicals on the basis of the tincture of iodine that he possessed, and setting the sentence for his attempt conviction using an estimate of how much methamphetamine that same iodine would have produced effectively merges two attempts into one and sets multiple punishments for that single offense. The offense level for Roberge's attempt conviction should have been determined with reference to the amount of the methamphetamine

> that the bi-layered liquids would have produced if the attempt had
> been successful; or alternately, the detectable, unquantified
> amount discovered by the Government's witness. Counsel was ineffective
> by not objecting [to] the sentencing method; and as a result, Roberge
> was put into a higher sentencing range.

[Court Doc. No. 131, Petitioner's Reply pp. 4-5].

This quoted paragraph from *Kingston* is irrelevant and does not support Roberge's double jeopardy argument. Roberge's proposed application of *Kingston* to his case to make out a double jeopardy claim is illogical. He misreads and misunderstands *Kingston*.

When the Sixth Circuit in *Kingston* reasons that it is sensible to punish separate offenses under former 21 U.S.C. § 841(d) and 21 U.S.C. § 846 according to the same basic principles because those statutes are similar and have the same object, limiting access to controlled substances by criminalizing attempts to create them, this adds nothing of any significance to Roberge's double jeopardy argument. *Kingston* did not involve a double jeopardy problem where multiple punishments were being imposed for the same criminal offense under the *Blockburger* test. The calculation of sentencing guideline ranges for different criminal offenses according to the "same principles" of punishment under U.S.S.G. § 2D1.1 is not the same as or equivalent to imposing multiple punishments for a single criminal offense which would be double jeopardy. Roberge's double jeopardy argument based on *Kingston* is without merit.

## C.      Second Claim

Next, Roberge claims that counsel was ineffective by not being adequately prepared for the sentencing hearing on Count Two. When calculating the guideline range on Count Two, a six-level increase was added to the base offense level because this Court determined that Roberge's methamphetamine lab in the basement of his family residence created a substantial risk of harm to a child, Yodi. U.S.S.G. § 2D1.1(b)(10)(D). Roberge contends that if his counsel had been

adequately prepared to present more facts and law at the sentencing hearing, then the six-level increase would not have been added to his base offense level on Count Two. Roberge asserts that the facts and law which were available to his counsel at the time of the sentencing hearing in May 2006 should have enabled counsel to persuade this District Court and/or the Sixth Circuit on direct appeal that the methamphetamine lab did not create a substantial risk of harm to Yodi.

Roberge alleges that counsel failed to present available evidence to show that the methamphetamine lab did not create a substantial risk of harm to Yodi, and counsel failed to properly present the applicable Sixth Circuit caselaw. It is claimed that defense counsel failed to inform this District Court of the proper facts and law during the sentencing hearing, failed to preserve this issue for appeal, and failed to bring the purported sentencing error to the Sixth Circuit's attention on Roberge's direct appeal. In short, Roberge contends that counsel's deficient performance caused the guideline range on Count Two to be incorrectly calculated which resulted in his being sentenced to a greater or more severe term of imprisonment.

Roberge submits a new declaration under penalty of perjury (28 U.S.C. § 1746) from his wife, Christel Roberge. [Court Doc. No. 123 and 123-1]. She testified at Roberge's trial in March 2006 but she was not called to testify at the sentencing hearing. Christel lived with Gary Roberge and their daughter in the family residence during the period of time when Gary Roberge was using methamphetamine and attempting to manufacture methamphetamine. In her declaration, Christel states the following:

> 2. In 2004, I lived with my husband, Gary Roberge, and our daughter, Yodi Roberge, at 128 Quill Drive, Cleveland, Tennessee. On April 13, 2004, the Cleveland, Tennessee, Police Department served a search warrant at our home. The police were investigating reports that Gary Roberge was making methamphetamine in the basement of our house.
>
> 3. It is my understanding that during the investigation our daughter Yodi told a police officer that fumes coming from the basement had burned

her throat.

> 4. Since our daughter was living in the house, I saw her every day, and we frequently discussed the situation concerning the basement. I do not believe that my daughter was at risk for any serious or permanent harm to her throat or respiratory system, or to her general health. If I had thought that my daughter's life or health had been at any serious risk I would have taken her from the house immediately and taken her to a doctor for medical attention. There was nothing that caused me to think that I should take her to a doctor, or to believe that that was a substantial risk of harm to my daughter's life or health. I would have testified to these things if I had been asked.

> 5. Nothing that has occurred since 2006 has caused me to reevaluate my belief that my daughter's throat irritation in 2004 was related to a substantial risk to her life or health.

[Court Doc. No. 123-1].

Roberge contends that his counsel was ineffective for not calling Christel to testify at the sentencing hearing in May 2006 consistent with her instant declaration. The gist of Roberge's claim is that, if Christel had given such testimony at the sentencing hearing, then the guideline range on Count Two would have been calculated differently, i.e. the six-level increase would not have been added to the base offense level.

This second claim must be denied. The Court agrees with respondent United States that Christel's self-serving declaration does not offer any new material facts that warrants granting relief to Roberge under 28 U.S.C. § 2255. The Court cannot say that it was objectively unreasonable for Roberge's counsel to decide not to call Christel to testify at the sentencing hearing. Any such testimony by Christel would not have changed the calculation of the guideline range on Count Two.

The minimal probative value of Christel's declaration is undercut by her trial testimony. During the trial, Christel testified to the following. She saw Gary Roberge use and smoke methamphetamine in the basement of their house "on and off" for several years. She avoided

entering the basement whenever possible because it was a "disaster area" with "junk everywhere" and "all kinds of jars." Although Christel testified that she had not observed Roberge manufacturing methamphetamine, she conceded that she would not have recognized it if she had seen it. She was unfamiliar with the process for manufacturing methamphetamine and would not know what it looked like. Christel was often away from the house because she worked two jobs. Gary Roberge was usually home since most of the time he was out of work and unemployed. Christel knew that Roberge used methamphetamine but she did not really know what he was doing in the basement.

The statements by Christel in her new declaration are not dispositive and would not have made any difference in the Court's ultimate decision. Assuming *arguendo* that Roberge's counsel had presented such testimony from Christel during the sentencing hearing, it would not have had any impact upon or changed the calculation of the guideline range on Count Two. It would not have caused this Court to change its mind and reach a different decision concerning whether Roberge's methamphetamine lab created a substantial risk of harm to the life of Yodi. Roberge engages in nothing more than conjecture and wishful thinking on this point.

The undisputed evidence established that Yodi lived in the house and was present there on an everyday basis. Roberge maintained his chemicals and methamphetamine lab in the basement. Yodi said that fumes from the methamphetamine burned or irritated her throat and caused her skin to break out. These facts are more than sufficient to justify adding the six-level increase to Roberge's base offense level on Count Two under U.S.S.G. § 2D1.1(b)(10)(D).

The Sentencing Guidelines do not require this Court to make a finding that Yodi was actually harmed or injured as a result of Roberge's methamphetamine lab. The Court need only find by a preponderance of the evidence that Yodi's life was placed at substantial *risk* of harm. *United States v. Paradis*, 289 Fed. Appx. 66, 69 (6th Cir. 2008); *United States v. Bivens*, 129 Fed. Appx. 159, 165

(6th Cir. 2005) (per curiam).

Roberge asserts that during the sentencing hearing, the government admitted that Yodi was not examined by a physician for the burning in her throat or skin irritation. This does not provide any support for Roberge's position. The key issue here is whether Roberge's conduct created a substantial risk of harm to Yodi, not whether Yodi suffered any actual harm or injury. It is immaterial whether Yodi was ever examined by a physician to determine whether she suffered physical harm or injury as a result of being exposed to the methamphetamine lab.

Under the applicable Sixth Circuit precedent, the methamphetamine lab in the basement of Roberge's home created a substantial risk of harm to Yodi who lived in the house. *Paradis*, 289 Fed. Appx. at 69; *United States v. Brain*, 226 Fed. Appx. 511, 514-15 (6th Cir. 2007); *Layne*, 324 F.3d at 470-71. This issue is not open to reasonable debate. It is well settled in the Sixth Circuit that certain chemicals used to manufacture methamphetamine are toxic and inherently dangerous. The process of manufacturing methamphetamine produces toxic gases and fumes which pose a serious risk to those persons who inhale them, and other dangerous byproducts. During the manufacturing process, the mixing and use of highly flammable chemicals present a significant risk or danger of explosion and fire. *United States v. Williams,* 2013 WL 1189245, * 6 (6th Cir. March 25, 2013); *Paradis*, 289 Fed. Appx. at 69; *United States v. Whited*, 473 F.3d 296, 299 (6th Cir. 2007); *Brain*, 226 Fed. Appx. at 514-15; *Layne*, 324 F.3d at 470-71.

Roberge contends there is no evidence that he ever attempted to manufacture methamphetamine while Yodi was present inside the house. Roberge argues that this Court gave undue weight to the lingering "telltale odor" of methamphetamine coming from the basement. DEA Agent Shelton described the odor of manufacturing methamphetamine as "long lasting" and testified that the odor can be smelled for days or sometimes weeks after the manufacturing process. It is

21

argued by Roberge that it is possible the methamphetamine odor Yodi smelled could have been lingering from what had occurred earlier when she was out of the house at school, work, or somewhere else.

This argument fails. These facts were presented during the sentencing hearing and taken into consideration by this Court when it calculated the guideline range on Count Two. This does not constitute a plausible basis to make out a viable claim of ineffective counsel. Roberge cannot use this § 2255 proceeding merely to relitigate the same issue that was previously considered and decided at the sentencing hearing.

Moreover, Roberge's argument is without merit as matter of law. Even if we assume *arguendo* that Roberge did not attempt to manufacture methamphetamine when Yodi was present inside the house, this does not mean that Roberge prevails. Yodi lived in the house and was present there on an everyday basis. Roberge maintained his chemicals and methamphetamine lab in the basement while Yodi was living or residing in the house. This is enough. It is not necessary for the government to present evidence that Yodi was in the house at the precise moment when Roberge was mixing chemicals to manufacture methamphetamine. The Sixth Circuit's opinion in *Brain*, 226 Fed. Appx. at 514-15, teaches us that the presence of Roberge's methamphetamine lab in the home was obviously a continuing threat and risk of substantial harm to anyone on the premises, including Yodi.

In sum, Roberge fails to show that this Court made a mistake of fact or error law when it calculated the sentencing guideline range on Count Two. The Court correctly added the six-level increase to the base offense level because Roberge's methamphetamine lab in the family residence created a continuing substantial risk of harm to Yodi. Therefore, Roberge does not have a viable Sixth Amendment claim of ineffective counsel. He fails to meet his burden of establishing both

22

prongs of the *Strickland* test. Roberge cannot show that his attorney's performance was deficient and fell below an objective standard of reasonableness. He also cannot show that the attorney's performance caused him to suffer any actual prejudice. There is no reasonable probability that the outcome of the criminal case would have been different and more favorable to Roberge if his counsel had raised these frivolous arguments and objections advocated by Roberge in his § 2255 motion.

**D.     Third Claim**

Roberge challenges the validity of his conviction under Count One for possession of firearms as an unlawful user of methamphetamine in violation of 18 U.S.C. § 922(g)(3). He claims that 18 U.S.C. § 922(g)(3) is unconstitutional on its face and as applied to him. It is argued that *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago, Illinois*, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) combine to establish a new rule of federal constitutional law which provides a basis to grant relief to Roberge under 28 U.S.C. 2255. Roberge cites *Heller* for the proposition that he had an individual core right under the Second Amendment to the United States Constitution to possess the firearms in his home for self-defense.

In *Heller*, 554 U.S. 570, the Supreme Court held that the Second Amendment protects an individual's right to keep and bear firearms without regard to militia service. *Heller* holds that the Second Amendment codified the pre-existing individual right to keep and bear arms. The core right recognized in *Heller* is "the right of law abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 635. In *McDonald*, 130 S.Ct. 3020, the Supreme Court held that the Second Amendment right of individuals to keep and bear firearms recognized in *Heller* is fully applicable to the States by virtue of the Fourteenth Amendment.

When challenging the constitutionality of 18 U.S.C. § 922(g)(3) on its face based on *Heller*,

Roberge is required to establish that no set of circumstances exist under which the statute would be valid under the Second Amendment. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *United States v. Khami*, 362 Fed. Appx. 501, 508 (6th Cir. 2010). The Court concludes that Roberge's third claim must be denied for the following reasons.

### 1.   **Claim Barred by Procedural Default**

Roberge waived this claim by not timely raising it during his direct appeal in the Sixth Circuit Court of Appeals. The claim is procedurally defaulted because Roberge could have, but did not, present this issue on direct appeal to the Sixth Circuit. On June 26, 2008, the Supreme Court rendered its opinion in *Heller*, 554 U.S. 570. *Heller* was decided while Roberge's direct appeal from his judgment of conviction and sentence was pending in the Sixth Circuit. The Sixth Circuit decided Roberge's direct appeal eleven months later on May 20, 2009. *Roberge*, 565 F.3d 1005. There is no indication in the Sixth Circuit's opinion that Roberge ever sought to raise the issue challenging the constitutionality of his conviction under 18 U.S.C. § 922(g)(3) based on *Heller*, 554 U.S. 570, and his Second Amendment right to possess firearms in his home for self-defense. Roberge thereby waived and procedurally defaulted this claim because he failed to take advantage of his opportunity to present it during his direct appeal in the Sixth Circuit.

Roberge can overcome the procedural default and raise the claim for the first time in this 28 U.S.C. § 2255 proceeding only if he establishes either: (1) good cause for the procedural default and actual prejudice (cause and prejudice test); or (2) actual (factual) innocence on Count One of violating 18 U.S.C. § 922(g)(3). *Bousley,* 523 U.S. at 621; *VanWinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011); *Waucaush v. United States*, 380 F.3d 251, 254 (6th Cir. 2004); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001).

The Court finds that Roberge has not met his burden of showing cause and prejudice to

excuse or overcome the procedural default. The procedural default was not caused by ineffective assistance of counsel. Roberge fails to establish either prong of the *Strickland* test. The performance of his counsel on direct appeal in the Sixth Circuit was objectively reasonable and did not cause actual prejudice to Roberge.

As discussed *infra*, Roberge's entire Second Amendment challenge to 18 U.S.C. § 922(g)(3) based on *Heller* is without merit. There is no good reason why his counsel should have raised this issue on Roberge's direct appeal in the Sixth Circuit. It was not a viable issue for direct appeal. Roberge's counsel was not required to raise and present this meritless argument to the Sixth Circuit. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *Brain*, 2011 WL 1343344, at * 11. Counsel's performance in the wake of *Heller* did not render the result of the criminal proceeding unreliable or fundamentally unfair. Roberge cannot show there is a reasonable probability that, but for his counsel not raising this issue on direct appeal, the result of the criminal proceeding would have been different and more favorable to him.

Furthermore, Roberge cannot show that the procedural default can be excused on the alternative ground of actual innocence. Actual innocence means factual innocence based on new reliable evidence, not mere legal insufficiency. *Bousley,* 523 U.S. at 623; *Schlup v. Delo,* 513 U.S. 298, 321 (1995); *VanWinkle,* 645 F.3d at 369. Roberge does not make a viable claim of actual (factual) innocence based on new reliable evidence that was not available at his trial. The record conclusively shows that he is not actually innocent of violating 18 U.S.C. § 922(g)(3) as charged in Count One.

### 2. 18 U.S.C. § 922(g)(3) Does Not Violate the Second Amendment

In addition to the procedural default, Roberge's third claim is without merit. This Court concludes that 18 U.S.C. § 922(g)(3) is constitutional on its face and does not violate the Second

Amendment in the wake of *Heller*, 554 U.S. 570. 18 U.S.C. § 922(g)(3) is also constitutional as applied to Roberge's case. The Sixth Circuit has not yet ruled on a post-*Heller* Second Amendment challenge to the constitutionality of § 922(g)(3). This Court is guided by the analytical framework adopted by the Sixth Circuit in *United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012).

In *Heller*, the Supreme Court recognized that the individual right to keep and bear firearms protected by the Second Amendment is not unlimited.

> From Blackstone through the 19th century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. (Citations omitted). For example, the majority of 19th century courts to consider the question held that the prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. (Citations omitted). Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller,* 554 U.S. at 626-27. The Supreme Court further noted: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 627 n. 26.

In *McDonald*, 130 S.Ct. 3020, the Supreme Court repeated these same assurances from *Heller*. The Fourteenth Amendment incorporates the Second Amendment individual right to keep and bear firearms recognized in *Heller* but this "does not imperil every law regulating firearms." *McDonald*, 130 S.Ct. at 3047.

The Supreme Court in *Heller* declined to define the full scope of the Second Amendment right. *Heller* articulates a non-exhaustive list of presumptively lawful regulations or restrictions on the right to keep and bear firearms. *Greeno*, 679 F.3d at 517. 18 U.S.C. § 922(g)(3) provides that

26

it shall be unlawful for any person who is an unlawful user of any controlled substance to possess in or affecting commerce any firearm. The list of presumptively lawful regulations of firearms articulated in *Heller* does not explicitly mention laws like 18 U.S.C. § 922(g)(3) that prohibit unlawful users of drugs or controlled substances from possessing firearms. This Court cannot rely on the *Heller* list of presumptively lawful firearm regulations alone to reject Roberge's Second Amendment challenge to 18 U.S.C. § 922(g)(3). *See Greeno*, 679 F.3d at 517-18.

The Sixth Circuit has adopted a two-pronged test for resolving post-*Heller* Second Amendment challenges to the validity of criminal statutes that regulate firearms, especially the subsections of 18 U.S.C. § 922(g). *Greeno*, 679 F.3d at 518-19. Under the first prong, this Court must determine whether 18 U.S.C. § 922(g)(3) burdens conduct that falls within the scope of the Second Amendment right, as historically understood, i.e. the right of law abiding, responsible citizens to keep and bear arms in defense of hearth and home. *Greeno*, 679 F.3d at 518-19; *accord United States v. Carter*, 669 F.3d 411, 416 (4th Cir. 2012); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). If § 922(g)(3) regulates activity that falls outside the scope of the Second Amendment right, as historically understood, then the analysis can stop there because the activity is categorically unprotected and the law is not subject to further Second Amendment review. *Greeno*, 679 F.3d at 518; *see also Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011).

Roberge's Second Amendment challenge to 18 U.S.C. § 922(g)(3) must be dismissed under the first prong. The Second Amendment right, as historically understood, does not protect the possession of firearms by individuals who are engaged in criminal activity. *Greeno*, 679 F.3d at 519-20. Persons like Roberge, who unlawfully use controlled substances, are not law abiding, responsible citizens. Roberge can be lawfully prohibited from possessing firearms while he is engaging in criminal conduct by using methamphetamine. Roberge's conviction under § 922(g)(3)

27

does not violate his Second Amendment right.

Even if we assuming *arguendo* that Roberge can clear the hurdle of the first prong, he cannot satisfy the second prong of the *Greeno* test. If the historical evidence is inconclusive or suggests that the regulated activity (possession of firearm by unlawful user of controlled substance) is not categorically unprotected, then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights. Under the second prong, the Court applies the appropriate level of scrutiny. If 18 U.S.C. § 922(g)(3) satisfies the applicable standard of scrutiny, then it passes constitutional muster. *Greeno*, 679 F.3d at 518.

Roberge urges this Court to apply a strict standard of scrutiny when evaluating his Second Amendment challenge to 18 U.S.C. § 922(g)(3). Roberge contends that he is protected by the Second Amendment core right to possess firearms in his home for self-defense.

This Court concludes that the strict standard of scrutiny cannot be applied to Roberge's claim. The Second Amendment core right is only enjoyed by law abiding, responsible citizens. *Heller*, 554 U.S. at 635. Roberge was not a law abiding, responsible citizen when he committed the violation of 18 U.S.C. § 922(g)(3). He was engaged in criminal activity by being a user of methamphetamine. Accordingly, intermediate scrutiny is the correct standard of review in Roberge's case. *Carter*, 669 F.3d at 416-17; *Chester*, 628 F.3d at 683; *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2012); *see also United States v. Mahin*, 668 F.3d 119, 124 (4th Cir. 2012).

To withstand intermediate scrutiny, 18 U.S.C. § 922(g)(3) must be substantially related to an important government interest or objective. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Intermediate scrutiny requires that there be a "reasonable fit" between § 922(g)(3) and a substantial government objective. *Board of Trustees of State Univesity of New York v. Fox*, 492 U.S. 469, 480 (1989); *Carter*, 669 F.3d at 417; *Mahin*, 668 F.3d at 124; *Chester*, 628 F.3d at 683; *Neinast v. Board*

*of Trustees of Columbus Metro. Library*, 346 F.3d 585, 594 (6th Cir. 2003).

Applying intermediate scrutiny, this Court has no difficulty finding that an important federal government interest is served by the enforcement of 18 U.S.C. § 922(g)(3). Section 922(g)(3) is substantially and reasonably related the government's important objective of protecting the public from crime by keeping firearms out of the hands of dangerous persons. Placed in the wrong hands, firearms present a grave threat to public safety. "Congress had an important objective for enacting 18 U.S.C. § 922(g)(3) to reduce gun violence and that disarming drug users and addicts might reasonably serve that objective." *Carter*, 669 F.3d at 421.

In *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011), the Ninth Circuit cogently explains that when habitual drug users are allowed to possess firearms, it presents the same amount of danger as allowing convicted felons and mentally ill people to do so.

> Habitual drug users, like career criminals and the mentally ill, more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances. Moreover, unlike people who have been convicted of a felony or committed to a mental institution and so face a lifetime ban, an unlawful drug user may regain his right to possess a firearm simply by ending his drug abuse. The restriction in § 922(g)(3) is far less onerous than those affecting felons and the mentally ill. *Yancey*, 621 F.3d at 686-87. Because Congress may constitutionally deprive felons and mentally ill people of the right to possess and carry weapons, we conclude that Congress may also prohibit illegal drug users from possessing firearms.

*Dugan*, 657 F.3d at 999-1000.

All federal courts that have addressed post-*Heller* Second Amendment challenges to 18 U.S.C. § 922(g)(3) have consistently upheld the statute. *See e.g., Dugan*, 657 F.3d 998; *United States v. Thomas*, 426 Fed. Appx. 459, 461 (7th Cir. 2011); *Yancey*, 621 F.3d 68; *United States v. Seay*, 620 F.3d 919 (8th Cir. 2010); *United States v. Richard*, 350 Fed. Appx. 252 (10th Cir. 2009); *United States v. Conrad*, 2013 WL 546373 (W.D. Va. Feb. 13, 2013); *United States v. Emond*, 2012

29

WL 4964506 (D. Me. Oct. 17, 2012); *United States v. Stacy*, 2010 WL 4117276 (S.D. Cal. Oct. 18, 2010). There is no reason for this Court to depart from this well-reasoned line of precedent and reach a different result in Roberge's case.

## IV. Conclusion

The motion by federal prisoner Gary Roberge for post-conviction relief pursuant to 28 U.S.C. § 2255 is DENIED and DISMISSED WITH PREJUDICE. His request for an evidentiary hearing is DENIED. His motion for scheduling preference [Court Doc. No. 133] is DENIED as moot.

If Roberge files a notice of appeal, it will be treated as an application for a certificate of appealability which is DENIED pursuant to 28 U.S.C. § 2253(c)(2) and Fed. R. App. P. 22(b) because he has failed to make a substantial showing of the denial of a federal constitutional right. The Court will certify pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24 that any appeal from this judgment by Roberge would be frivolous and not taken in good faith.

A separate judgment will be entered.

SO ORDERED.

ENTERED: August 12, 2013.

_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE